**HAITIAN CENTERS COUNCIL, INC., et al., Plaintiffs,**

v.

**Gene McNARY, Commissioner, Immigration and Naturalization Service, et al., Defendants.**

No. 92 CV 1258.

United States District Court, E.D. New York.

March 27, 1992.

Lowenstein Intern. Human Rights Clinic, Allard K. Lowenstein, International Human Rights Law Project, New Haven, Conn. by Harold Hongju Koh, Center for Constitutional Rights, New York City by Michael Ratner, for plaintiffs.

Andrew J. Maloney, U.S. Atty., Brooklyn, N.Y. by Scott Dunn, Asst. U.S. Atty., for defendants.

## MEMORANDUM AND ORDER

JOHNSON, District Judge:

This cause of action arises on the application of the following (hereinafter "the Plaintiffs"): Haitian Centers Council, Inc., National Coalition for Haitian Refugees, Inc., Immigration Law Clinic of the Jerome N. Frank Legal Services Organization, (the "Haitian Service Organizations"), Dr. Frantz Guerrier, Pascal Henry, Lauriton Guneau, Medilieu Sorel St. Fleur, Dieu Renel, Milot Baptiste, Jean Doe, and Roges Noel on behalf of themselves and all others similarly situated (the "Screened In Plaintiffs")[1]; A. Iris Vilnor on behalf of herself and all others similarly situated (the "Screened Out Plaintiffs"); and Mireille Berger, Yrose Pierre and Mathieu Noel on behalf of themselves and all other similarly situated (the "Immediate Relative Plaintiffs") for a Temporary Restraining Order pursuant to F.R.C.P. 65. The defendants in this action are Gene McNary, Commissioner, Immigration and Naturalization Service; William P. Barr, Attorney General; Immigration and Naturalization Service; James Baker, III, Secretary of State; Rear Admiral Robert Kramek and Admiral Kime, Commandants, United States Coast Guard; and Commander, U.S. Naval Base, Guantanamo Bay (collectively, the "Defendants" or the "Government"). Plaintiffs seek to restrain the Defendants from:

1) denying plaintiff Haitian Service Organizations access to their clients for the purpose of providing such clients legal counsel, advocacy, and representation;

2) interviewing, screening, or subjecting to exclusion or asylum proceedings any Haitian citizen currently being detained on Guantanamo, on Coast Guard cutters, or in territory subject to United States jurisdiction who is being denied or has been denied his or her right to communicate with counsel; and

3) returning to Haiti any Haitian citizen currently detained at Guantanamo, on the Coast Guard cutters, or in territory subject to U.S. jurisdiction, who has been "screened-out" without the benefit or advice of counsel.

## BACKGROUND

In December 1990, the country of Haiti held its first fully democratic elections in

---

1. Throughout this opinion, reference will be made to so-called "screened in" and "screened out" Haitian aliens. For purposes of this opinion, "screened in" individuals include Haitian aliens who satisfy the threshold standard for refugee status and are to be brought to the United States so that they may file an application for asylum under the Immigration and Nationality Act ("INA") and "screened out" individuals include Haitian aliens who do not meet the threshold standard for refugee status and who will be repatriated to Haiti.

over 200 years and elected Jean Bertrand Aristide as President. On September 30, 1991, President Aristide was overthrown in a military coup and thousands of Haitians attempted to escape the country's upheaval by fleeing onto the high seas in boats. The United States Coast Guard began interdicting an increasing number of vessels carrying Haitian refugees on the open seas.[2] The United States temporarily suspended it program of repatriation of interdicted Haitians. On November 18, 1991, the United States announced it had begun the forced return of refugees who were "screened out" by the Immigration and Naturalization Service ("INS") and determined not to be entitled to political asylum.[3]

### a. The Baker Litigation

The following day, the Haitian Refugee Center (hereinafter "HRC") and individual Haitian refugees (hereinafter "Named Haitian Plaintiffs") on behalf of themselves and all others similarly situated filed a complaint (*Haitian Refugee Center v. Baker*, Dkt. No. CV–91–2635, S.D.Fla.) (hereinafter *"Baker"*) for Declaratory Judgment and Injunctive Relief, and an Application for Temporary Restraining Order (the "First TRO") in the United States District Court for the Southern District of Florida. The defendants named therein were James Baker, III, Secretary of State; Rear Admiral Robert Kramer and Admiral Kime,

Commandants, United States Coast Guard; Gene McNary, Commissioner, Immigration and Naturalization Service; The United States Department of Justice; Immigration and Naturalization Service; and The United States of America.

Following an *ex parte* hearing on November 19, 1991, the Florida district court issued the First TRO which directed the defendants to restrain "from continuing to repatriate Haitians currently on board U.S.-flagged vessels and Haitians currently being held on land under United States' control and at Guantanamo Bay, Cuba." On December 3, 1991, the district court issued an order granting preliminary injunctive relief specifically enjoining the defendants from "forcefully repatriating the individual plaintiffs or class members in their custody either until the merits of the underlying action are resolved or until defendants implement and follow procedural safeguards adequate to ensure that Haitians with bona fide claims of political persecution are not forcefully returned to Haiti." [4]

The court found that the plaintiffs were likely to succeed on the merits of two judicially enforceable claims: 1) HRC's First Amendment right of association and to counsel; and 2) the Named Haitian Plaintiffs' right of non-refoulement [5] which arises under Article 33 of the 1967 United Nations Protocol Relating to the Status of

---

**2.** On September 23, 1981, Haiti and the United States entered into a cooperative agreement (the "Agreement") to prevent the illegal migration of aliens without visas from entering the United States. Interdiction Agreement, Sept. 23, 1981, United States–Haiti, T.I.A.S. No. 10241. Under the Agreement, the United States may board Haitian flag vessels on the high seas for the purpose of making inquiries relating to the condition and destination of the vessels and the status on board. If a violation of United States or Haitian law is ascertained, the vessel and its passengers may be returned to Haiti. The Agreement also explicitly provides that it is "understood that ... the United States does not intend to return to Haiti any Haitian migrants whom the United States authorities determine to qualify for refugee status."

**3.** According to the Defendants, as of March 19, 1992, the disposition of the interdiction and repatriation program is as follows:

—16,464 Haitians have been interdicted

—9,542 Haitians have been repatriated to Port-au-Prince

—3,446 Haitians are ashore at Guantanamo Bay Naval Base

—2,822 Haitians have been brought to the United States to pursue asylum claims

—233 Haitians have been transported to third countries

—0 Haitians are aboard Coast Guard cutters.

**4.** *Haitian Refugee Center v. Baker,* No. 91 CV 2635 *Order Granting preliminary Injunctive Relief and Supporting Memorandum Opinion* (S.D.Fla. December 3, 1991).

**5.** Article 33.1 of the Convention provides:

no contracting State shall expel or return ('refouler') a refugee in any manner whatsoever to the frontiers of territories where his life or freedom would be threatened on account of his race, religion, nationality, membership of a particular social group or political opinion. T.I.A.S. No. 6577 (1968).

Refugees. The court also issued an order stating the action could be maintained as a class action without holding a hearing or altering the class definition. In their Memorandum in Support of Motion for Class Action Certification ("HRC Mem."), the *Baker* plaintiffs defined the class as follows:

> The individual plaintiffs are all Haitian emigres who were intercepted by the United States Coast Guard pursuant to a "program of interdiction" that permits interception and repatriation of undocumented aliens. They are presently being held on Coast Guard cutters and at the U.S. Naval base in Guantanamo. They have all been *'screened out'* and thus are injured by the failure of the INS to observe rules and procedures designed to ensure that no person who is a political refugee will be returned without his consent. *Id.* at 2 (emphasis added).

In other words, the class of plaintiffs involved in the *Baker* litigation were limited to individuals who had already been screened out by INS.

The Eleventh Circuit dissolved this injunction on December 17, 1991 ("*Baker App. I*") and remanded the case with instructions that the Article 33 claim be dismissed on the merits. In *Baker App. I,* the Court of Appeals found that 1) the injunction was overbroad; 2) the relief granted did not address the right of access asserted by the Haitian Refugee Center; and 3) Article 33 of the 1976 United Nations Protocol Relating to Status of Refugees is not self-executing, and thus provides no enforceable rights to Haitians who had not reached United States territory. *Haitian Refugee Center v. Baker,* 949 F.2d 1109 (11th Cir.1991).

The district court subsequently issued another TRO (the "Second TRO") on the plaintiffs' claim that defendants failed to follow the procedural requirements of the

Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555(b), 557, 558 and 702. On December 19, 1991, the Eleventh Circuit deemed the Second TRO a preliminary injunction and stayed it pending appeal on the ground that it was likely that the government would prevail on the merits of the APA claim ("*Baker App. II*").[6]

The following day, the district court entered a preliminary injunction ordering defendants to grant plaintiffs' lawyers access to the interdicted class members. On December 23, 1991, the court entered a second preliminary injunction on the ground that the plaintiffs were likely to succeed on the merits of their APA claim and simultaneously stayed its enforcement pursuant to the Eleventh Circuit's decision in *Baker App. II.*

The Eleventh Circuit Court of Appeals issued a (2–1) *per curiam* opinion on February 4, 1992 ("*Baker App. III*") reversing the District Court's injunction on First Amendment and APA grounds, vacating all District Court orders, and remanding the case with instructions to dismiss because the complaint failed to state a claim upon which relief could be granted.[7] The plaintiffs filed a petition for a writ of certiorari and an accompanying application for a stay of the Eleventh Circuit's mandate in *Baker App. III.* On February 24, 1992, the Supreme Court denied certiorari and petitioners' application for a stay of the *Baker App. III* mandate. *Haitian Refugee Center v. Baker,* — U.S. —, 112 S.Ct. 1245, 117 L.Ed.2d 477 (1992).

Five days after the Supreme Court denied plaintiffs' petition for certiorari in *Baker App. III,* the General Counsel of the INS, Grover Joseph Rees, circulated a memorandum setting forth policy to interview "any person 'screened in' as a possible refugee who has been determined to have a

---

**6.** *Haitian Refuge Center v. Baker,* 950 F.2d 685 (11th Cir.1991) ("*Baker App. II*").

**7.** The Court of Appeals ruled that aliens who had been interdicted on the high seas and had not presented themselves at United States' borders had no right to judicial review under the Administrative Procedure Act; 2) the executive order providing for interdiction of aliens did not create a private right of action in favor of aliens improperly returned; and 3) Haitian Refugee Center had no First Amendment right to access to aliens lawfully interdicted and detained. *Haitian Refugee Center v. Baker,* 953 F.2d 1498 (11th Cir.1992) ("*Baker App. III*").

communicable disease that is not curable ... to determine whether he or she is a refugee." On March 2, 1992, six Screened In Plaintiffs contacted one of the Haitian Service Organizations seeking legal assistance. Nine days later, counsel to the Haitian Service Organizations wrote to the Commissioner of the INS and the Commander of the Guantanamo Naval Base, requesting immediate access to their clients on Guantanamo Bay and Coast Guard cutters off Guantanamo.[8] On or about March 10, 1992, approximately 20 asylum officers arrived at Guantanamo to decide the asylum claims of some of the "screened in" Haitians who have been denied access to counsel and who are now members of the plaintiff class in the instant action.

### b. *The Present Action*

On March 17, 1992, the plaintiffs filed an order to show cause with supporting affirmations as an "emergency matter" on this court's Miscellaneous docket which was subsequently referred to the Civil docket and assigned, by random selection, to this court. That same afternoon, this court heard oral argument from both plaintiffs' and defendants' counsel on plaintiffs' application for a temporary restraining order (the "TRO") and their demand for expedited discovery. The following morning, this court heard more oral argument and the plaintiffs filed a complaint seeking declaratory and injunctive relief. During oral argument, the defendants asserted that plaintiffs were wholly precluded from bringing this suit by the prior litigation in *Baker.*

This court took the matter under advisement and requested that the parties brief certain issues related to the TRO. The Defendants filed their Memorandum in Opposition to Plaintiffs' Motion for a Temporary Restraining Order, a Motion to Dismiss pursuant to F.R.C.P. 12(b)(6) for fail-

ure to state a claim, and a Motion for Rule 11 Sanctions on March 20, 1992.[9] Plaintiffs filed reply papers on March 23, 1992. After reviewing the papers, the court finds that the plaintiffs' papers raise sufficient questions of law and fact to conclude that the *Baker* litigation does not entirely preclude the present action. As set forth below, the court finds that some of the plaintiffs meet the standards for the immediate issuance of a TRO.

### DISCUSSION

### a. *Res Judicata*

#### I. New Parties

■■■■ The doctrine of res judicata bars relitigation of any claim between two parties where a court has previously entered a final judgment on the merits. *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Milltex Industries Corp. v. Jacquard Lace Co. Ltd.,* 922 F.2d 164 (2d Cir.1991). Where the subsequent litigation involves new parties and new claims, the action is not barred by *res judicata.* Nonetheless, the doctrine of collateral estoppel precludes litigation of any issue of law or fact that was necessary to the court's judgment in a prior action involving the same party. *Allen v. McCurry,* 449 U.S. at 94, 101 S.Ct. at 414.

■■■■ Based on my understanding of the complaint, plaintiff A. Iris Vilnor, who sues on behalf of herself and all others similarly situated, is seeking relief for herself and other Haitians who were "screened out" prior to the *Baker* litigation and who are bound by its outcome. As the complaint's description of this class fails to state whether these individuals were ever screened in, it appears that these class members are not new parties.[10] Thus *Baker* precludes their claims herein.

---

**8.** According to the plaintiffs, the Haitian Service Organizations have yet to receive a response. See discussion *infra.*

**9.** For the purposes of this TRO, the court will not address Defendants' Motion to Dismiss and Motion for Rule 11 Sanctions as they are premature. In the event that Plaintiffs prevail in the preliminary injunction hearing, the court will

then address the merits of these motions by the Defendants.

**10.** If Plaintiffs are able to establish at the preliminary injunction hearing that this class includes Haitians who were "screened in" prior to and during the *Baker* litigation and therefore were not parties to *Baker,* and since that time have been "screened out," then this court will

■ Of the remaining plaintiffs in the present action, all of the Haitian Service Organizations are new and two of the three plaintiff classes are new parties. The immediate relatives of "screened in" Haitians and all those similarly situated make up an entirely new plaintiff class which was not a party to the *Baker* litigation. In addition, the Haitian plaintiffs in the present action consist of a *new* "screened in" class of refugees who were not included in the *Baker* class. Finally, the Haitian Service Organizations in this action differ from the plaintiff organization (Haitian Refugee Center) in *Baker.*[11] Therefore, it appears that *res judicata* is inapplicable to the Haitian Service Organizations, the Screened In Plaintiffs and the Immediate Relative Plaintiffs.

## II. Subsequent and Changed Conduct

Res judicata is also inapplicable where neither conduct complained of nor the claim had arisen at the time of the first suit. *Prime Management Co., Inc. v. Steinegger,* 904 F.2d 811 (2d Cir.1990); *N.L.R.B. v. United Technologies Corp.,* 706 F.2d 1254 (2d Cir.1983); *see generally* Wright, Miller & Cooper, 18 *Federal Practice and Procedure* § 4409 (West 1981). That certainly appears to be true in present action. Plaintiffs' complaint is based upon new circumstances or conduct that occurred after the *Baker* litigation and it is such conduct that gives rise to a new cause of action. Specifically, the present complaint alleges that during the *Baker* litigation the defendants represented:

> Under current practice, any aliens who satisfy the threshold standard *are to be brought to the United States so that they can file an application for asylum* under Section 208.02 of the Immigration and Nationality Act (INA), 80 SL sec. IJ8(a). These 'screened in' individuals then have the opportunity for a *full adjudicatory determination* of whether they satisfy the statutory standard of being a 'refugee' and otherwise qualify for the discretionary relief of asylum. Complaint ¶ 34(f) (*citing* Opposition to Certiorari, *Baker App. III,* at 3.).

Five days after the Supreme Court denied certiorari, the INS began implementing procedures to interview or screen individuals who had been "screened in."

Plaintiffs allege that the Screened In Plaintiffs contacted the Haitian Service Organizations seeking legal assistance on March 2, 1992. Plaintiffs learned on March 10th that asylum officers arrived in Guantanamo to begin adjudicating asylum claims of the some of the "screened in." The next day, counsel to the Haitian Service Organizations wrote to defendant McNary and the Commanding Officer of the U.S. Naval Air Station, Guantanamo Bay, requesting access to the Screened In Plaintiffs and the Screened Out Plaintiffs by March 16, 1992. To date, Plaintiffs' counsel has received no response.

Plaintiffs allege that the Government is re-screening and adjudicating asylum claims not only for HIV positive refugees as the government contends but many if not all the "screened in" Haitians on Guantanamo. These re-screenings and adjudications are allegedly being conducted without providing the refugees the opportunity to obtain and communicate with counsel. Presuming the complaint true for present purposes—specifically, that the Government's conduct began subsequent to the *Baker* litigation—it appears that this conduct gives rise to new claims, making *res judicata* inapplicable.

### b. *Issuance of a Temporary Restraining Order*

■ A court may issue an temporary restraining order upon a showing of irreparable harm and for the purpose of preserving the status quo long enough to hold a

---

reconsider its initial conclusion that *Baker* bars them from litigating their claims in this action.

**11.** The government argues that privity should bar the Haitian Service Organizations from bringing this action. On the face of the complaint, this court fails to see any privity relationship or anything which conclusively establishes the existence of privity. If the Government is able to raise an issue of fact as to privity at the hearing on the preliminary injunction, this court will resolve this issue at that time.

hearing. *Warner Bros. Inc. v. Dae Rim Trading Inc.*, 877 F.2d 1120 (2d Cir.1989), citing *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974).

■ Here, the plaintiffs have made a showing of irreparable harm by a preponderance of the evidence. According to the plaintiffs, aliens are three times more likely to receive asylum in an exclusion or deportation hearing, and twice as likely to success in an affirmative asylum claim when represented by counsel. If the Screened In Plaintiffs on Guantanamo are not afforded asylum, are "screened out" and are ultimately repatriated to Haiti, they face irreparable injury to life and liberty.

Since the military overthrow of President Jean Bertrand Aristide on September 30, 1991, reportedly over fifteen hundred Haitians, many of them supporters of Aristide, have been killed, tortured, or subjected to violence and the destruction of their property because of their political beliefs. Hundreds of people have been detained without warrant or executed extrajudicially. Thousands of people have been forced into hiding.

There are reports that Haitians who have been repatriated since November 1991 are interviewed, fingerprinted and photographed upon their arrival in Port-au-Prince. Apparently, over 200 Haitians who were repatriated from Guantanamo have been imprisoned. There are approximately forty repatriated Haitians who have fled for a second time (also known as "Double–Backers") and are currently being detained on Guantanamo. The Double–Backers lend further credence to reports of the widespread violence that is occurring. *See, Some Haitians Assert Abuse Forced Second Flight,* N.Y. Times, Feb. 10, 1992 at A1.[12]

Given that at a preliminary injunction hearing the Plaintiffs are likely to prove their assertions that there are new parties and/or new claims in the instant action, the merits of this action will need to be addressed. Serious questions going to such merits are raised by the papers and oral argument so far presented to this court. In particular, I am quite disturbed that the Government asserts that the court lacks the power to restrain conduct by United States officials that is arbitrary, capricious and perhaps even cruel. (*See* Hearing Transcript at p. 39) when such conduct occurs on territory that is subject to United States jurisdiction.[13] Worse yet, the Government asserts that this court must sit mute when Congress mandated:

> In any exclusion or deportation proceedings before a special inquiry officer ..., the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose.

8 U.S.C.A. § 1362. Additionally, INS's regulations specifically provides that an alien "shall be advised of his right to representa-

---

**12.** Although the court believes that the only factor that must be satisfied for a TRO is irreparable harm, *see* F.R.Civ.P. 65(b), the court notes that one district court has applied a more stringent standard when a TRO is issued on notice: 1) a showing of irreparable harm and 2) sufficiently serious questions going to the merits making them fair ground for litigation and balance of hardship tipping in favor of the moving party. *See Binghamton City School District v. Borgna,* No. 90 CV 1360, 1991 WL 29985 at *4 (N.D.N.Y. March 6, 1991). This court finds no Second Circuit or Supreme Court precedent for the application of this higher standard to this TRO issued on notice.

Were this court obligated to inquire into the second factor, however, it finds that the second prong of such standard has been satisfied. Specifically, although this TRO may increase the government's financial burden, when this cost is balance against the irreparable harm to life and liberty the plaintiffs may face if they lose their bid for asylum and are repatriated, the court concludes that the balance of hardships tip in favor of the plaintiffs. Finally, as to any potential "magnet effect," I find that, at this time, the relief afforded herein is so temporary in nature and narrowly drawn that it should not encourage more Haitians to take to the high seas. In addition, as is discussed more fully in the text above, the court also finds that there are serious questions going to the merits to make them fair ground for litigation.

**13.** Guantanamo Bay, Cuba is subject to United States jurisdiction. *See* Treaty Between the United States of America and Cuba, Feb. 16, 1903.

tion by counsel of his choice at no expense to the Government." 8 C.F.R. § 242.1(c) (1990). In light of the foregoing, serious issues are raised which warrant the issuance of the TRO herein granted and, moreover, a fuller exploration of the merits of this action at a preliminary injunction hearing.

c. *Security*

■ Defendants demand that plaintiffs post a $10,000,000 bond as security. In light of the Government's failure to substantiate its demand for a $10 million bond, the plaintiffs' indigence, and the important questions raised in this case, the court will exercise its discretion and waive the bond. *See United States v. Bedford Associates,* 618 F.2d 904, 916–17 n. 23 (2d Cir.1980).

## CONCLUSION

For the foregoing reasons, it is hereby:

ORDERED, that sufficient reason having been shown therefore, pending the hearing for the plaintiffs' application for a preliminary injunction, pursuant to Federal Rule 65, defendants are temporarily restrained and enjoined from:

a) denying plaintiff service organizations access to their clients for the purpose of providing them legal counsel, advocacy, and representation;

b) interviewing, screening, or subjecting to exclusion or asylum proceedings any Haitian citizen currently being detained on Guantanamo, or in any other territory subject to U.S. jurisdiction (I) who has been screened in or who was screened in prior to the *Baker* litigation and has since been screened out and (ii) who is being denied or has been denied his or her right to communicate with counsel; and it is further

ORDERED that expedited discovery be granted, thereby in accordance with the following scheduling order:

(i) defendants must produce documents for inspection and copying on or before March 31, 1992; and

(ii) plaintiffs are granted leave to serve and depose Defendants on or before April 1, 1992 at 9:00 a.m.; and it is further

ORDERED, that the defendants or their attorneys show cause before The Honorable Sterling Johnson, Jr., United States District Judge, at the United States Courthouse in the Eastern District of New York, 225 Cadman Plaza, Brooklyn, New York, in Courtroom 14 at 9:00 a.m. on April 1, 1992, why an order should not be entered granting Plaintiffs' request for Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65 thereby in accordance with the terms of the TRO issued herein or as otherwise may be deemed just and proper.

So ordered.