**HAITIAN CENTERS COUNCIL, INC.,** National Coalition for Haitian Refugees, Inc., Immigration Law Clinic of the Jerome N. Frank Legal Services Organization, of New Haven Connecticut; Dr. Frantz Guerrier, Pascal Henry, Lauriton Guneau, Medilieu Sorel St. Fleur, Dieu Renel, Milot Baptiste, Jean Doe, and Roges Noel on Behalf of Themselves and All Others Similarly Situated; A. Iris Vilnor on Behalf of Herself and All Others Similarly Situated; Mireille Berger, Yvrose Pierre and Mathieu Noel on Behalf of Themselves and All Others Similarly Situated, Plaintiffs,

v.

Gene McNARY, Commissioner, Immigration and Naturalization Service, William P. Barr, Attorney General; Immigration and Naturalization Service; James Baker, III, Secretary of State; Rear Admiral Robert Kramek and Admiral Kime, Commandants, United States Coast Guard; and Commander, U.S. Naval Base, Guantanamo Bay, Defendants.

No. 92 CV 1258 (SJ).

United States District Court, E.D. New York.

Nov. 12, 1992.

Stuart M. Gerson, Asst. Atty. Gen., Steven R. Valentine, Deputy Asst. Atty. Gen., U.S. Dept. of Justice, Robert L. Bombaugh, Director, Office of Immigration Litigation, Dept. of Justice, Lauri Steven Filppu, Deputy Director, Allen W. Hausman, Thomas W. Hussey, Alice M. King, Charles E. Pazar, Emily Ann Radford, Michele Y.F. Sarko, Norah Ascoli Schwarz, Karen Fletcher Torstenson, Mark C. Walters, Washington, DC, Scott Dunn, of counsel to U.S. Atty. Andrew J. Maloney, E.D.N.Y., Brooklyn, NY, for defendants.

## MEMORANDUM AND ORDER

JOHNSON, District Judge:

The Plaintiffs commenced this class action seeking declaratory and injunctive relief arising from the Government's actions against Haitians and Haitian Service Organizations following the military coup that overthrew the government of Jean–Bertrand Aristide on September 30, 1991.

The Complaint states the following causes of action: 1) First Claim for Relief alleges that the Haitian Service Organizations have been denied their First Amendment right of access to their clients on Guantanamo; 2) Second Claim for Relief alleges that the Haitian plaintiffs have been denied their statutory right to obtain and communicate with counsel in violation of 8 U.S.C. § 1362 and 8 C.F.R. § 208.9; 3) Third Claim for Relief states that the Haitian plaintiffs have been denied their constitutional rights to obtain and communicate with counsel in violation of the first and fifth Amendment; 4) Fourth Claim for Relief alleges that the Government failed to follow rulemaking procedures set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. § 551, et seq. in initiating new policies and practices; 5) Fifth Claim for Relief charges the Government's with a "pattern and practice of intimidating and coercing plaintiffs, of discouraging and diminishing their rights to asylum and to alternative-country placement, and of willfully relying upon false information and prejudicial biases to effect forced repatriations and to deny individual asylum claims on their merits are arbitrary and capricious, an abuse of discretion, not in accor-

Harold Hongju Koh, Carroll D. Lucht, Lowenstein Intern. Human Rights Clinic, Allard K. Lowenstein, Intern. Human Rights, New Haven, CT, Simpson Thacher & Bartlett by Joseph F. Tringali, Paul Curnin, Jennifer Klein, Susan Sawyer, New York City, Michael Ratner, Suzanne Shende, Jules Lobel, Center for Constitutional Rights, New York City, Robert Rubin, Ignatius Bau, Nat. Refugee Rights Project–San Francisco Lawyers' Committee for Urban Affairs, San Francisco, CA, for plaintiffs.

dance with law, and reviewable by this court" under the APA, 5 U.S.C. § 701 *et seq.;* 6) Sixth Claim for Relief states that the Government has a mandatory duty not to return political refugees to a country where they will face persecution and to provide adequate procedures to examine colorable asylum claims under Article 33 of the United Nations Convention Relating to the Status of Refugees, the Refugee Act of 1980, the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1253(h), Executive Order 12324, the U.S.–Haiti Agreement, Agreement Effected by Exchange of Notes, signed at Port–au–Prince September 23, 1981, and the Immigration and Naturalization Service ("INS") guidelines; and 7) Seventh Claim for Relief alleges that the Government has "denied plaintiffs the equal protection of the laws by creating and operating an unauthorized, separate and unequal, asylum track for Haitians only."

The Government moves to the dismiss the Complaint pursuant to Fed.R.Civ.P. ("Rule") 12(b)(6) for failure to state a claim. For the reasons stated below, the Government's Motion to Dismiss is granted in part and denied in part.

## I.  Background [1]

### A. *The First Injunction*

On March 17, 1992, the Plaintiffs filed an order to show cause with supporting affirmations as an "emergency matter" on this Court's Miscellaneous docket which was subsequently referred to the civil docket and assigned to this judge. That same afternoon this court heard oral argument from both Plaintiffs' and Government's counsel on Plaintiffs' application for a temporary restraining order ("TRO") and their demand for expedited discovery. The following morning, this Court heard more oral argument and the Plaintiffs filed a complaint seeking declaratory and injunctive relief. During oral argument, the Government asserted that Plaintiffs were wholly precluded from bringing this suit by the prior litigation in *Haitian Refugee Center, Inc. v. Baker.* [2]

This Court took the matter under advisement and requested that the parties brief certain issues related to the TRO. The Government filed their Memorandum in Opposition to Plaintiffs' Motion for a Temporary Restraining Order, a Motion to Dismiss pursuant to Rule 12(b)(6) for failure to state a claim, and a Motion for Rule 11 Sanctions on March 20, 1992.[3] Plaintiffs filed reply papers on March 23, 1992. After reviewing the papers, the Court found that the Plaintiffs' papers raise sufficient questions of law and fact to conclude that the *Baker* litigation did not entirely preclude the present action and issued a TRO on March 27, 1992.[4]

Five days later the Court held a hearing on Plaintiff's application for a preliminary injunction. On April 6, 1992, the Court issued a preliminary injunction after finding that the Plaintiffs had made a showing of irreparable harm and a likelihood of succeeding on the merits. The court specifically concluded that: 1) the Government's denial of access to the Haitian Service Organization appears to be a content based restriction on speech; 2) the statutory right to counsel under 8 U.S.C. § 1362 and 8 C.F.R. § 208.9 does not extend to the Haitian aliens beings detained on Guantanamo; and 3) the Screened In Plaintiffs are entitled to the protection of the Fifth Amendment. In addition, the Court ruled that the Screened Out Plaintiffs represent-

---

**1.** The parties and factual background of this action are well documented in my prior decisions (*Haitian Centers Council, Inc. v. McNary,* 789 F.Supp. 541 (E.D.N.Y.1992) and Memorandum and Order, No. 92 CV 1258, 1992 WL 155853 (E.D.N.Y. April 6, 1992)) and two Second Circuit decisions (*Haitian Centers Council, Inc. v. McNary,* 969 F.2d 1326 and 969 F.2d 1350 (2d Cir.1992)) familiarity with which is assumed.

**2.** 789 F.Supp. 1552 (S.D.Fla.1991), *remanded by* 949 F.2d 1109 (11th Cir.1991), *rehearing denied by* 954 F.2d 731 (1992), *cert. denied by* —— U.S. ——, 112 S.Ct. 1245, 117 L.Ed.2d 477 (1992).

**3.** The Government withdrew its Motion for Sanctions pursuant to Rule 11 on September 3, 1992.

**4.** At that time, the Court expressly declined to rule on Defendant's Motion to Dismiss. The Court noted that it would address the merits of this motion if the plaintiffs prevailed in the preliminary injunction hearing.

ed by Iris Vilnor were bound by the outcome of *Baker.*

The Government filed an appeal from this Court's April 15, 1992 order clarifying the relief granted in its April 6, 1992 Memorandum and Order on April 18, 1992. Four days later the Supreme Court granted the Government's application for a stay of this order pending the Second Circuit's disposition of the appeal. On June 10, 1992, the Second Circuit affirmed and modified this Court's April 6th preliminary injunction in *Haitian Centers Councils, Inc. v. McNary,* 969 F.2d 1326 (2d Cir.1992). Without addressing the First Amendment claim of the Haitian Service Organizations, the Court of Appeals agreed that there were serious questions going to the merits of the Screened In Plaintiffs' Fifth Amendment claims. On September 23, 1992, the Government filed a petition seeking certiorari with the United States Supreme Court.

### B. *The Second Injunction*

While awaiting a decision from the Court of Appeals on the appeal from the first injunction, the Government substantially altered its policy toward Haitian refugees fleeing the political upheaval in Haiti. On May 24, 1992, the President issued an Executive Order directing the United States Coast Guard to return any Haitian interdicted beyond the territorial waters of the United States directly to Haiti without being afforded the opportunity to undergo INS refugee screening. Plaintiffs quickly moved on Order to Show Cause for a temporary restraining order pursuant to Fed. R.Civ.P. 65 restraining the Government from acting pursuant to the May 24th Executive Order.

At a hearing on May 29, 1992, the Plaintiffs argued that the new policy violated Section 243(h) of the INA, Article 33 of the United Nations Convention relating to the Status of Refugees and the 1981 U.S.–Haiti Executive Agreement. On June 6, 1992, the court denied Plaintiff's application for a preliminary injunction.

The Plaintiffs immediately appealed to the Second Circuit Court of Appeals. On

July 29, 1992, the Court of Appeals reversed this Court's June 6th order denying a preliminary injunction finding that the language of § 243(h) of the INA imposes a mandatory duty upon the United States not to return aliens to their persecutors, no matter where in the world those actions are taken. *Haitian Centers Council, et al. v. McNary,* 969 F.2d 1350 (2d Cir.1992). On August 1, 1992, the Supreme Court granted the Government's application for a stay pending filing of a petition of a writ of certiorari. The Supreme Court recently granted the Government's petition seeking certiorari on this question in *McNary v. Haitian Centers Council, Inc.,* — U.S. ——, 113 S.Ct. 52, 121 L.Ed.2d 22 (1992).

### II. Analysis

#### A. *Rule 12(b)(6) Standard*

The Court will examine the Plaintiff's claims under Rule 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Festa v. Local 3 International Brotherhood of Electrical Workers,* 905 F.2d 35, 37 (2d Cir.1990). The court must accept the facts as alleged in the complaint as true. *Easton v. Sundram,* 947 F.2d 1011, 1014–15 (2d Cir.1991). A motion to dismiss must be denied "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (*citing Conley v. Gibson,* 355 U.S. 41, 45–6, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

#### B. *Failure to Follow Rulemaking Procedures*

■ Plaintiff's Fourth Claim for Relief alleges that the Government failed to follow rulemaking procedures under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551, *et seq.* in implementing its new policy for rescreening "screened-in" Haitians as set forth in the Rees memorandum.[5]

---

**5.** The February 29, 1992 memorandum from Grover Joseph Rees to John Cummings of the

INS regarding "Interviews of 'Screened In' Per-

Section 553, the APA's notice and comment provision, provides the following:

(b) General notice of proposed rule making shall be published in the Federal Register....

The notice shall include—

(1) a statement of the time, place, and nature of public rule making proceedings;

(2) reference to the legal authority under which the rule is proposed; and

(3) either the terms or substance of the proposed rule or a description of the subjects and issues involved.

5 U.S.C.A. § 553. This subsection does not apply to "interpretative rules, general statements of policy, or rules of agency organization, procedure or practice." *Id.*

■ The Government asserts that the Rees memorandum falls within the exceptions to the rulemaking requirement for general statements of policy and matters

---

sons Subject to Medical Exclusions" provides as follows:

As you know, there are a number of persons at the naval base in Guantanamo who have been "screened in" as possible refugees but who have been determined to have a communicable disease of public health significance.

The Immigration and Nationality Act (INA) requires that persons with communicable diseases of public health significance "shall be excluded from admission into the United States." INA § 212(a)(1). With respect to persons who are determined to be refugees, however, the Act provides that the Attorney general may waive the medical exclusion "for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest." *id.* § 207(c)(3). Such a waiver must be in writing and shall be granted only on an individual basis following an investigation. *Id.*

The Act further provides that the Attorney General may temporarily parole aliens into the United States (rather than admitted as a refugee under the formal refugee admission process) only when the Attorney General finds parole to be "require[d]" by "compelling reasons in the public interest." *Id.* § 212(d)(5)(B).

With respect to a person whose application for parole is premised on the possibility that he or she may be a refugee, but who has been determined to have a communicable disease of public health significance, the judgment with respect to whether parole is required by "compelling reasons in the public interest" should be informed by the same factors that would justify a waiver of the medical exclusion if the person were to seek admission as a refugee. That is, the waiver must be justified "for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest." *Id.* § 207(c)(3). At a minimum, this requires a determination that the person is in fact a refugee.

Accordingly, any person "screened in" as a possible refugee who has been determined to have a communicable disease that is not curable

should be given an interview to determine whether he or she is a refugee within the definition of INA § 101(a)(42). In the case of a Haitian national in Guantanamo, this definition requires a finding that the person is unable or unwilling to return to Haiti because of a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. This finding is identical to that required to grant asylum or refugee status. The interview should therefore be identical in form and substance, or as nearly so as possible, to those conducted by asylum officers to determine whether asylum should be granted to an applicant already in the United States.

Interviews should be conducted according to the usual standards and techniques for asylum interviews. *See* Interview Checklist, INS Asylum Branch Procedures Manual and Operations Instructions, p. 121 (March 1992). An Asylum Assessment should be prepared for each applicant, in accordance with the assessment format set forth in the Procedures Manual and Operations Instructions. *See id.* at 124–25. All assessments should be forwarded to the Director of the Asylum Branch. When the interviewing asylum officer determines that an applicant is not credible, or that the facts adduced in the interview are insufficient, even if true, to establish a well founded fear of persecution within the definition of the Act, this determination should be noted in the assessment along with the reasons therefor. When the interviewing officer determines that an applicant appears credible and that the facts adduced would, if true, establish a well founded fear of persecution, the assessment will be forwarded to the State Department for information concerning the accuracy of the applicant's assertions about his or her experiences and about country conditions. *See* 8 C.F.R. § 208.11.

These procedures should be followed only with respect to persons whose communicable diseases of public health significance are not curable. Persons whose diseases are susceptible of prompt treatment and cure, and who would not thereafter be medically excludable, should be handled in accordance with established procedures pending further guidance.

relating to foreign affairs. In construing the exemption for "interpretative rules" or "general statements of policy", the Second Circuit has held that a rule which changes existing rights or obligations is not exempt regardless of how the agency describes it. But, a rule which does not change substantive rights or obligations may be exempt. *New York v. Lyng,* 829 F.2d 346, 353–54 (2d Cir.1987); *Noel v. Chapman,* 508 F.2d 1023, 1030 (2d Cir.), *cert. denied,* 423 U.S. 824, 96 S.Ct. 37, 46 L.Ed.2d 40 (1975). General statements of policy are directed primarily at the staff of an agency describing how it will conduct discretionary functions. Other rules are directed at the public and impose obligations on them. *Noel v. Chapman,* 508 F.2d at 1030.

The purpose of the Rees memorandum is to provide general guidance to INS officers on how to conduct interviews with screened in Haitian aliens who suffer from communicable disease. It instructs INS officers to conduct a second round of interviews identical in form and substance to those conducted by asylum officers to determine whether asylum should be granted to an applicant already in the United States. It is directed solely at INS agency officials. Although the directive makes screened in Haitians to undergo a second round of interviews, it does not change the criteria they must meet in order to receive asylum. The Court must conclude that the Rees memorandum constitutes a general statement of policy for the purposes of § 553. Therefore, Plaintiffs' Fourth Claim for Relief is dismissed for failure to state a claim.

### C. *Arbitrary and Capricious Agency Action Not In Accordance With Law*

■ Plaintiff's Fifth Claim for Relief alleges that the Government's conduct is arbitrary and capricious and an abuse of discretion under 5 U.S.C. § 701 *et seq.* An abuse of discretion under 5 U.S.C. § 706(2)(A) can be shown by demonstrating a violation of constitutional, statutory, or regulatory mandates. *Perales v. Sullivan,* 948 F.2d 1348, 1354 (2d Cir.1991). The

Plaintiffs allege that the Government has violated Section 243(h) of the INA, the President's Executive Order No. 12324 of September 1981 and INS Guidelines. Therefore, the Court finds that Plaintiffs' Fifth Claim for Relief satisfied the requirements of Rule 12(b)(6).

### D. *Judicial Enforceability of Non–Refoulement*

■ When this Court first addressed this issue, it concluded that § 243(h) was inapplicable to Haitian aliens in international waters. On appeal, the Second Circuit Court of Appeals reversed this Court's order and found that § 243(h) applied to all aliens. Thus, the plain language of the statute imposes a mandatory and judicially enforceable duty upon the United States not to return aliens to their persecutors. *Haitian Centers Council, Inc. v. McNary,* 969 F.2d 1350 (2d Cir.1992). In light of this holding, the Court finds that the Plaintiffs' Sixth Claim for Relief to be legally sufficient under Rule 12(b)(6).

### E. *Equal Protection*

■ The Seventh Claim for Relief alleges that "[s]ince the September 1991 coup, defendant officials have denied plaintiffs the equal protection of the laws by creating and operating an unauthorized, separate and unequal asylum track for Haitians only." The Complaint further alleges that the current asylum system denies Haitian refugees the substantive and procedural rights enjoyed by asylum applicants of other racial and national groups.

■ The Government argues that the Complaint fails to state a cause of action because Haitian aliens outside the borders of the United States have no fifth amendment rights not given to them by Congress. This Court disagrees. I previously held that the Screened In Plaintiffs are "persons" and entitled to the protection of the Fifth Amendment.[6] On affirming this court's issuance of the first injunction, the Second Circuit noted that "applying the

---

6. For analysis on applicability of Fifth Amendment to Haitians detained on Guantanamo *see Haitian Centers Council, Inc., et al. v. McNary,*

Memorandum and Order, No. 92 CV 1258, 1992 WL 155853 (E.D.N.Y. April 6, 1992)

fifth amendment would not appear to be either 'impracticable' or 'anomalous' since the United States has exclusive control over Guantanamo Bay, and given the undisputable applicability of federal criminal laws to incidents that occur there." *Haitian Centers Council, Inc. v. McNary,* 969 F.2d at 1343.

Although the Fifth Amendment contains no equal protection clause, it forbids discrimination that is "so unjustifiable as to be violative of due process." *Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954). This Court recognizes that the executive branch is afforded substantial discretion to make nationality-based distinctions among aliens. *American Baptist Churches in the U.S.A. v. Meese,* 712 F.Supp. 756, 772 (N.D.Cal.1989). Nevertheless, these decisions may be reviewed for equal protection violations. *Id.; Hotel & Restaurant Employees Union, Local 25 v. Smith,* 563 F.Supp. 157, 163 (1983).

### F. *Other Claims*

When this Court entered a preliminary injunction in favor of the Plaintiffs on April 3, 1992, it concluded that the Plaintiffs were likely to succeed on the merits of Counts One and Three of the Complaint. In doing so, the Court necessarily found that these claims satisfied the requirements of Rule 12(b)(6).

Finally, the Court also found that as a matter of law 8 U.S.C. § 1362 and 8 C.F.R. § 208.9 did not apply extraterritorially. Therefore, the Second Claim for Relief fails to state a claim and is dismissed.

### III. CONCLUSION

For the reasons stated above, the Government's Motion to Dismiss the Complaint for failure to state a claim is granted with respect to Plaintiffs' Second and Fourth Claims for Relief and is hereby denied with respect to all other claims.

So Ordered.